IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>DARELL RICHARDS,<br><br>　　　　　　　Defendant. | **8:13CR371**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court after a sentencing hearing on August 15, 2014. The matter was continued to enable the court to address several issues, including the defendant's objections to the Presentence Investigation Report (PSR).[1]

I.　　　　Introduction

The facts in this case require the court to wade into an *Apprendi* analysis to determine the essential demands of due process in connection with a criminal sentence increased by prior convictions.[2]  The case requires discussion of the balance, interplay, and tension between the Supreme Court's elements–centric focus in *Apprendi* and following cases and the tenuous, though still viable, *Almendarez-Torre*s prior-conviction exception to the *Apprendi* rule.[3]  Intertwined with the inquiry are the double jeopardy implications of the defendant's plea, Fed. R. Crim. P. 11 error and due process concerns.

---

[1] The defendant objects to the conclusion that he is an armed career criminal and to the use of two prior convictions as "violent felonies" to elevate his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA").

[2] *See Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[3] *See Almendarez–Torres v. United States*, 523 U.S. 224 (1998)

In this case, the government contends the court is required to sentence the defendant to a fifteen-year mandatory minimum sentence, although he entered a plea of guilty to an indictment that charges a crime with a maximum sentence of ten years. For reasons set forth below, the court finds that fundamental fairness demands that ten years is the maximum sentence the court can impose. The court also finds the defendant's objections to the Presentence Investigation Report ("PSR") should be sustained.

II.     Procedural Posture/Facts

Darell Richards was charged in an indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Filing No. 1, Indictment. The Indictment did not charge, or hint by statutory citation, any enhancement for being an armed career criminal. *Id.* On February 7, 2014, the defendant entered a plea of guilty to the Indictment. Filing No. 21, text minute entry. In his petition to enter a plea, he acknowledged that the penalty for the violation is zero to ten years. Filing No. 23, Petition at 4. During the plea colloquy at the change-of-plea hearing, the court, with neither objection nor comment from the government, informed the defendant that the maximum penalty he could face was ten years. The government made no mention of the possibility of any enhanced penalty based on prior convictions.[4]

The court found the defendant's plea was knowing and voluntary and accepted the plea. The court then ordered the preparation of a Presentence Report (PSR) by the

---

[4] In the court's experience, if a prior conviction enhancement is contemplated, the defendant is generally informed of that fact and acknowledges the possibility of an increased sentence at the plea hearing. Such a plea could then be regarded as conditional.

United States Office of Probation ("Probation") and set a hearing for sentencing. Filing No. 21, text minute entry.

The PSR provided the parties with the first notification of a possible sentencing enhancement. Probation found the defendant is subject to a statutory imprisonment range of a minimum mandatory of 15 years and a maximum of life, based upon the defendant's status as an "Armed Career Criminal" under 18 U.S.C. § 924(e)(1). *See* Revised PSR (sealed) at 6. Probation based that conclusion on three convictions that "occurred between 2007 and 2010, in the Douglas County District Court, and consist of assault on an officer; burglary; and assault on an officer."[5] *Id.* The defendant's criminal history includes: two juvenile adjudications; two felony convictions for assault on a corrections officer, one at age 17 and one at age 18; a felony conviction for theft by receiving and flight to avoid arrest at age 15; a felony conviction for receiving a stolen item at age 16; and a felony conviction for burglary at age 20.[6] *Id.* at 8-10.

At the sentencing hearing that commenced on May 30, 2014, the defendant objected to the imposition of the 15-year mandatory minimum sentence. The court ordered briefing on two issues: 1) whether a firearms enhancement must be pled in the indictment; and 2) when jeopardy attaches. Filing No. 28, text minute entry.

The government responded that the enhancement does not have to be charged in the indictment, but conceded that jeopardy attached at the time the court accepted the defendant's plea. Filing No. 29, Brief at 3. It argues that although jeopardy has

---

[5] The defendant does not dispute that the assault convictions qualify as predicate felonies under the ACCA.

[6] Notably, Probation did not count the convictions for theft by receiving and flight to avoid arrest as predicate offenses for purposes of the ACCA.

attached, the Fifth Amendment is not implicated because Richards's "prior convictions alone, with nothing required from the United States, operate to increase his penalties under the Armed Career Criminal Act." Filing No. 29, Response at 3.

The government concedes that the defendant was not properly advised of the minimum and maximum penalties at the time of his plea as required by Fed. R. Crim. P. 11(b)(1)(H)&(I) and acknowledges that a Rule 11 error has occurred. Filing No. 26, Government's Sentencing Statement at 2. It further concedes that the Eighth Circuit Court of Appeals would not be likely to find the error harmless on review. *Id.* The government contends that the remedy for the violation is "for the court to vacate the guilty plea and allow the defendant to plead anew." *Id.*; *see also* Filing No. 29, Government brief at 3.

The defendant argued in his response that he is not subject to the § 924(e) enhancement because his prior conviction for burglary is not a violent crime under Supreme Court's recent holding in *Descamps v. United States*, —- 570 U.S. —-, —-, 133 S. Ct. 2276, 2293 (2013). Filing No. 32, Brief at 1. The government countered, for the first time, that Richards's conviction for flight to avoid arrest also constitutes a violent felony, and argues Richards is subject to the ACCA fifteen-year mandatory minimum regardless of whether the burglary conviction counts as a violent felony.[7] Filing No. 36, Brief at 1-2.

At the rescheduled sentencing hearing on August 15, 2014, Richards orally objected to use of his flight-to-avoid-arrest conviction as an ACCA predicate felony,

---

[7] In making this argument, the government does not concede that a conviction for burglary in Nebraska is not a conviction for a violent felony.

4

again basing the objection on *Descamps*.   The court considers the defendant's response and his arguments at the hearing as objections to the PSR.   The defendant contends that the court must determine whether his prior offenses trigger application of the ACCA before it considers the double jeopardy issue.   *Id.* at 4.   The defendant has not moved to withdraw his plea.

The government has submitted judicial records of the defendant's convictions for burglary and flight to avoid arrest.   *See* Filing No. 36, Ex. 1 (2010 burglary conviction) and Ex. 2 (2007 theft by receiving and flight to avoid arrest conviction).   The records consist of the charging documents (Informations) and sentencing orders for each crime.[8]   *Id.*

III.   Law

A.   *Apprendi/Almendarez-Torres*

In *Apprendi*, the Supreme Court held that if the maximum penalty a defendant faces is increased based on a finding of fact, that fact must be treated as an element of

---

[8] Those records show that in 2006, in docket 168-967, Richards was charged in Count I with "receiv[ing], retain[ing], or dispos[ing] of stolen movable property, 1997 Chevrolet Cavalier owned by Michael J. Linhart, valued at over $1,500.00, knowing or believing that it had been stolen and lacking the intent to restore the property to the owner," and in Count II with "operat[ing] a motor vehicle, to flee in such vehicle in an effort to avoid arrest for violation of a law constituting a felony, to wit:  Theft by Receiving Stolen Property, " in violation of Neb. Rev. Stat. §§ 28-517 and 28-905(2).   *Id.,* Ex. 2 at 2-3.   An order filed on January 9, 2007, in that case states that Richards "entered a plea of no contest on September 22, 2006 to:  Count I: Theft by Receiving Stolen Property, a Class IV Felony; and Count II: Operating a Motor Vehicle to Avoid Arrest for Felony, a Class IV Felony."   *Id.* at 5.

In 2010, in docket 185-396, Richards was charged by Information with "willfully, maliciously and forcibly break[ing] and enter[ing] into real estate or improvements erected thereon at 2518 N. 66th Avenue, Douglas County, Nebraska, with the intent to commit a felony or with the intent to steal property of any value, the said real estate occupied by Michael Schlautman," in violation of Neb. Rev. Stat. § 28-507(1), a Class III felony.   *Id.,* Ex. 1 at 2.   A document entitled "Plea and Sentence," filed January 26, 2011, indicates that Richards appeared, withdrew his previous plea "not guilty" plea, was arraigned, and "voluntarily, knowingly and intelligently entered a plea of No Contest to Burglary, a Class III Felony, and thereupon was adjudged by the court to be guilty as charged."   *Id.*, Ex. 1 at 5

5

the crime.  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  Just as with other elements, a defendant has right to have a jury determine that fact based on proof beyond reasonable doubt.  *Id.*  In the years that followed, the Supreme Court extended this rule to facts that trigger eligibility for the death penalty, facts that raise a sentencing guideline range, facts that permit larger criminal fines, and, most recently, to facts that trigger mandatory minimum sentence.  *See Ring v. Arizona*, 536 U.S. 584, 588–589 (2002) (applying *Apprendi* to death penalty authorized by findings of fact on aggravating factors); *Blakely v. Washington*, 542 U.S. 296, 302 (2004) (applying *Apprendi* to facts that increase imprisonment above statutorily-prescribed "standard range"); *United States v. Booker*, 543 U.S. 220, 226–227, 233–234 (2005) (applying *Apprendi* to facts that increase imprisonment range for defendant under then-mandatory Federal Sentencing Guidelines); *Cunningham v. California*, 549 U.S. 270, 281 (2007) (applying *Apprendi* to facts that elevate the "upper term" of imprisonment); *Burrage v. United States*, —- U.S. —-, —-, 134 S. Ct. 881, 886-87 (2010) (applying *Apprendi* to facts that establish a statutory enhancement that increases both the minimum and maximum sentences); *Southern Union Co. v. United States*, —- U.S. —-, —-, 132 S. Ct. 2344, 2348-49 (2012) (applying *Apprendi* to facts that increase criminal fines); and *Alleyne v. United States*, —- U.S. ——, ——, 133 S. Ct. 2151, 2156 (2013) (applying *Apprendi* to facts that trigger mandatory minimum sentences).  The Supreme Court's findings were based on Fifth and Sixth Amendment concerns involving rights to trial by jury, appropriate notice, proper burdens of proof, and due process.  *See*, *e.g.*, *United States v. Cotton*, 535 U.S. 625, 627 (2002); *Blakely*, 542 U.S. at 307; *Booker*, 543 U.S. at 243. The Supreme Court has also held that a substantively unreasonable penalty is illegal

6

and must be set aside. *Gall v. United States*, 552 U.S. 38, 51 (2007); *see e.g.,*
*Meirovitz v. United States*, 688 F.3d 369, 373 (8th Cir. 2012) (Bright, J., concurring and
noting, in the context of habeas corpus relief, that "[t]he statutory-maximum sentence
cannot be the only touchstone for whether or not a miscarriage of justice has occurred
at sentencing."); *Narvaez v. United States*, 674 F.3d 621, 629–30 (7th Cir. 2011)
(finding a career offender enhancement amounted to a miscarriage of justice); *see also*
*Jones v. United States,* —- S. Ct. ——, —-, 2014 WL 1831837, *1 n.* (October 14,
2014) (Mem.) (Scalia, Thomas, and Ginsburg, J.J., dissenting from denial of certiorari in
a case involving a sentence increase based on acquitted conduct).

The limits of due process are defined with reference to the line that separates an
element of a crime from a sentencing factor. *See, e.g., Booker*, 543 U.S. at 242;
*Blakely*, 542 U.S. at 302; *Apprendi*, 530 U.S. at 494; *Jones v. United States*, 526 U.S.
227, 232-33 (1999) (finding serious bodily injury enhancement in carjacking statute was
a separate offense with distinct elements). These cases establish that when proof of a
fact achieves the status of an element of what is essentially a greater offense, a
defendant is afforded several Constitutional protections: the right to a jury
determination and the right to proof beyond a reasonable doubt.[9] *See e.g., Jones*, 526
U.S. at 252 (noting three separate statutory carjacking offenses by the specification of
distinct elements, each of which must be charged by indictment, proven beyond a
reasonable doubt, and submitted to a jury).

---

[9] In the federal system, a defendant is ordinarily entitled to have such facts alleged in the
indictment, although an indictment's failure to allege an essential element of an offense does not
constitute a jurisdictional defect. *See Cotton*, 535 U.S. at 627 (noting the government's concession that
failure to allege a fact that increases the statutory maximum sentence is plain error under *Apprendi* and is
subject to review under the plain-error test of Federal Rule of Criminal Procedure 52(b)).

However, the Supreme Court has never applied the *Apprendi* rule to one particular fact—the fact of a "prior conviction." *Almendarez–Torres,* 523 U.S. at 247 (holding that the fact of a prior conviction, even when it increases the sentence to which the defendant is exposed, may be found by a judge under a preponderance of evidence standard).[10]  The rationale that has been advanced to justify why prior convictions, unlike other facts that raise sentencing ranges, need not be proven to a jury beyond a reasonable doubt is that the defendant would have already been afforded those same due process protections for the prior conviction.  *See, e.g., Descamps,* 133 S. Ct. at 2300-01 (Alito, J., dissenting) (noting "the defendant has already enjoyed his Sixth Amendment right to a jury determination of those elements." (quoting *Taylor,* 495 U.S. at 602)); *Jones,* 526 U.S. at 249 (explaining that the recidivism exception was permitted because "a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees").

Though the prior conviction exception remains viable, commentators and lower courts have detailed how the foundation for the rule in *Almendarez-Torres* has been eroded.  *See, e.g., United States v. Adame-Orozco,* 607 F.3d 647, 651 n.6 (10th Cir. 2010) (questioning the continuing viability of *Almendarez-Torres*); *Nichols v. United States,* 563 F.3d 240, 243 n.1 (6th Cir. 2009) (noting a question concerning the status of

---

[10] *See also Cunningham,* 549 U.S. at 281–82 (stating "[o]ther than a prior conviction, we held in *Apprendi,* 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" (internal citation omitted)); *Carachuri-Rosendo v. Holder,* 560 U.S. 563, 563 n.3 (2010) ("[T]he statutory scheme comports with *Almendarez-Torres*, in which we explained that the Constitution does not require treating recidivism as an element of the offense" (internal citations omitted)); *United States v. O'Brien,* 560 U.S. 218, 224, 235 (2010) (noting that "one exception has been established" and that "the recidivist provisions in [18 U.S.C. § 924](C)(i) and (ii)] . . . are typically sentencing factors"); *James v. United States,* 550 U.S. 192, 214 n.8 (2007) (rejecting argument that defendant's prior conviction was required to be found by a jury, and stating "we have held that prior convictions need not be treated as an element of the offense for Sixth Amendment purposes.").

8

the *Almendarez-Torres* decision); *cf. Shepard v. United States*, 544 U.S. 13, 27 (2005) (Thomas, J., concurring in part and concurring in the judgment) (suggesting that *Almendarez-Torres* "has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that [it] was wrongly decided").  Nonetheless, noting that the parties did not contest the vitality of the prior-conviction exception, the Supreme Court recently declined to revisit it.  *Alleyne*, 133 S. Ct. at 2160 n.1; *United States v. Abrahamson*, 731 F.3d 751, 752 (8th Cir. 2013), *cert. denied*, ––– U.S. –––, 134 S. Ct. 1565 (2014) (observing that "the [Supreme] Court in *Alleyne* left intact the rule that enhancements based on the fact of a prior conviction are an exception to the general rule that facts increasing the prescribed range of penalties must be presented to a jury").[11]

>    B.    Fed. R. Crim. P. 11/ Double Jeopardy

"Rule 11 requires the district court to follow certain protocol to ensure a defendant's plea is knowing, intelligent, and voluntary."  *United States v. Gray*, 581 F.3d 749, 752 (8th Cir. 2009).  Rule 11(b)(1) provides in relevant part that:

> [b]efore the court accepts a plea of guilty . . . , the defendant may be placed under oath, and the court must address the defendant personally in open court.  During this address, the court must inform the defendant of,

---

[11] Notably, at least three Supreme Court Justices (Justices Scalia, Thomas, and Ginsburg) have already made their opposition to the exception clear.  *See, e.g., Descamps*, 133 S. Ct. at 2294–95 (Thomas, J., concurring); *Shepard,* 544 U.S. at 26–28 (Thomas, J. concurring in part and concurring in the judgment); *Monge v. California*, 524 U.S. 721, 737–39 (1998) (Scalia, J., dissenting); *Almendarez-Torres,* 523 U.S. at 247–70 (1998) (Scalia, J., dissenting); *Rangel-Reyes v. United States*, 547 U.S. 1200, 1201 (2006) (Thomas, J., dissenting from denial of certiorari) (stating "the exception to trial by jury for establishing 'the fact of a prior conviction' finds its basis not in the Constitution, but in a precedent of this court.").  Also, Justices Sotomayor and Kagan espouse the principle that when prosecutors are perfectly able to charge and prove these facts to a jury, "stare decisis does not compel adherence to a decision whose 'underpinnings' have been 'eroded' by subsequent developments of constitutional law." *Alleyne,* 133 S. Ct. at 2164–66 (Sotomayor, J., concurring).

> and determine that the defendant understands . . . any maximum possible
> penalty, including imprisonment, fine, and term of supervised release. . .

Fed. R. Crim. P. 11(b)(1)(H); *see also United States v. Garcia*, 604 F.3d 575, 578–80

(8th Cir. 2010).

"'Rule 11 is intended to ensure that a defendant makes an informed and

voluntary plea' as required under the Due Process clause." *United States v. Adame-*

*Hernandez*, 763 F.3d 818, 830 (7th Cir. 2014)(quoting *United States v. Mitchell*, 58 F.3d

1221, 1223, 1225 (7th Cir. 1995)(discussing Rule 11's "constitutional foundation"). Rule

11 is "the central procedural safeguard for a defendant who is about to waive several

constitutional rights." *Adame-Hernandez*, 763 F.3d at 830 (noting that failure to adhere

to Rule 11 may result in a plea bargaining process that is so confused that a reviewing

court cannot say with confidence that a plea is knowing and voluntary in all respects).

Rule 11 further provides that: "[a] variance from the requirements of this rule is

harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h)(emphasis

added); *see United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (applying plain

error review to a Rule 11 violation, but expressly noting that no Due Process violation

was involved). Failure to inform a defendant of the maximum penalty is error. *Gray*,

581 F.3d at 752. In the Eighth Circuit, an unpreserved Rule 11 error is subject to review

for plain error, in which case the burden is on the defendant to show he would have

plead not guilty but for the Rule 11 violation. *Id.* When the defendant has objected and

the error is preserved, the government has the burden of proving, on review, that the

defendant's knowledge and comprehension of the omitted information would not have

been likely to affect his willingness to plead guilty. *Id.*

A claim of error under Rule 11 is not the equivalent of a due process challenge to the plea.  *See* *Dominguez Benitez*, 542 U.S. at 83, 84 n. 10 (noting the constitutional question is whether a defendant's guilty plea was knowing and voluntary); *United States v. Frook*, 616 F.3d 773, 775 (8th Cir. 2010) (noting a district court's failure to comply with Rule 11 calls into question the knowing and voluntary nature of a plea, and thus its validity).   Where the Rule 11 error results in a complete miscarriage of justice or a situation that is inconsistent with the rudimentary demands of fair procedure, a defendant may collaterally attack a conviction with a claimed Rule 11 error.   *See* *Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1991).

Jeopardy attaches when a court accepts a guilty plea.[12]  *See* *Adame-Hernandez, 763 F.3d* at 828; *United States v. Rea*, 300 F.3d 952, 957 (8th Cir. 2002) ("assume without deciding that jeopardy attached when the district court accepted the guilty plea.").   A district court exceeds its authority under Rule 11 by rejecting a guilty plea subsequent to having accepted it unless there is no factual basis for the plea.   *See Adame-Hernandez, 763 F.3d at 825* (stating "[o]nce the court accepts a guilty plea, the conditions under which the plea may be withdrawn are governed exclusively by Rule 11 of the Federal Rules of Criminal Procedure" (quotation omitted)); s*ee also United States v. Cruz,* 709 F.2d 111, 114 (1st Cir. 1983); *United States v. Ritsema*, 89 F.3d 392, 399

---

[12] Because the government concedes this point, the court will not belabor the issue, but notes that there is considerable support for the proposition the jeopardy attaches at the time the court accepts a plea.  *See, e.g., Bally v. Kemna*, 65 F.3d 104, 108 (8th Cir.1995) (noting that "several federal courts have questioned the rationale of cases holding that jeopardy attaches upon acceptance of a guilty plea," but assuming for purposes of the case "that jeopardy attached when the court accepted the guilty plea); *United States v. Jones*, 733 F.3d 574, 580 (5th Cir. 2013) ("Generally, when a defendant pleads guilty, jeopardy attaches at the time the guilty plea is accepted."); *United States v. McIntosh*, 580 F.3d 1222, 1227 (11th Cir. 2009) ("[J]eopardy normally attaches when the court unconditionally accepts a guilty plea.").

(7th Cir. 1996) (stating there is no provision in the rules allowing a court to reject or modify an agreement once accepted); *United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993); *United States v. Partida–Parra*, 859 F.2d 629, 631-33 (9th Cir. 1988); *United States v. Blackwell*, 694 F.2d 1325, 1338-39 & n.19 (D.C. Cir. 1982).   Nothing in Rule 11 authorizes a district court to withdraw a defendant's guilty plea for him.   *Adame-Hernandez*, 763 F.3d at 825.   It is the defendant's choice whether to stand by his plea or withdraw it.   *Id.*; *see In re Ellis*, 356 F.3d 1198, 1207 (9th Cir. 2004) (en banc). "[A]lthough the district court is free to reject the plea agreement after accepting a guilty plea, it is not free to vacate the plea either on the government's motion or sua sponte." *United States v. Patterson*, 381 F.3d 859, 865 (9th Cir. 2004) (holding that "when the court accepts a guilty plea but rejects the plea agreement, it becomes the defendant's choice whether to stand by the plea or to withdraw the plea."); *see also United States v. Vinyard*, 539 F.3d 589, 595 (7th Cir. 2008) (noting that in vacating a defendant's plea on its own motion, the district court "effectively usurped a choice that was the defendant's to make").

"The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of [prejudicial prosecutorial or judicial] error." *United States v. Dinitz*, 424 U.S. 600, 609 (1976) (holding that the double jeopardy clause does not bar retrial of a defendant who successfully moves for a mistrial); *United States v. Scop*, 940 F.2d 1004, 1008 (7th Cir. 1991) ("In the absence of a proper motion by the defendant, a judge obviously cannot presume that a defendant is waiving his double jeopardy rights and is willing to be re-tried."); *Vinyard*, 539 F.3d at 592 (finding patent error warranting mandamus relief in *sua*

*sponte* vacatur of plea and noting that court "effectively grant[ed] a defendant a new trial without waiting for the defendant to request the relief).

A serious misapplication of Rule 11 can result in a potential double jeopardy problem. *See Vinyard*, 539 F.3d at 595 (holding Rule 11 error was not harmless and granting mandamus to correct such an error); *Adame-Hernandez,* 763 F.3d at 828-29. A defendant, in essence, suffers double jeopardy when the court improperly vacates, or withdraws, *sua sponte*, a plea because a Rule 11 error of this nature raises the same jurisdictional concerns as a double jeopardy challenge—-"namely, the district court's lack of authority to hale [the defendant] into court to face a subsequent indictment." *Id.* at 828-29 (holding that a double jeopardy violation is an exception to the general rule that an unconditional guilty plea operates as a waiver of all formal defects in the proceedings that occurred before the plea, since it relates to a court's statutory or constitutional authority to hale the defendant into court); *see also Morris v. Reynolds*, 264 F.3d 38, 49 (2d Cir. 2001)(stating that a guilty plea is a conviction, and that a prosecution for the same offense following a guilty plea is prohibited); *Patterson*, 381 F.3d at 864-65 (holding the defendant was protected by the Double Jeopardy Clause from the moment his plea was accepted); *United States v. Olmeda*, 461 F.3d 271, 279 (2nd Cir. 2006) (double jeopardy clearly prohibits a second prosecution for the same offense following a guilty plea).

C.    ACCA-*Descamps*

The ACCA imposes a fifteen-year minimum sentence on a defendant convicted under 18 U.S.C. § 922(g) when that defendant has three or more prior convictions for a

"violent felony" or a "serious drug offense" or both.[13]   18 U.S.C. § 924(e)(1).   The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."   18 U.S.C. § 924(e)(2)(B)(i) & (ii).

The meaning of "physical force" in § 924(e)(2)(B)(i) is a question of federal law, not state law.   Johnson v. United States, 559 U.S. 133, 137 (2010).   In the context of a statutory definition of "violent felony," "the phrase 'physical force' means violent force— that is, force capable of causing physical pain or injury to another person."   Id.; see Leocal v. Ashcroft, 543 U.S. 1, 11 (2004) (stating that "the ordinary meaning of [a crime of violence] . . . suggests a category of violent active crimes" (quotation omitted));[14] cf. United States v. Castleman, 134 S. Ct. 1405, 1410 (2014) (holding that the requirement of "physical force" in connection with a prior misdemeanor domestic violence conviction

---

[13] The Supreme Court has spoken frequently on the prior conviction exception in the context of the ACCA in a series of cases in recent years, generally narrowing its application.  See, e.g.,  Descamps, 133 S. Ct. at 2282 (finding a California  burglary conviction is not a conviction for a violent felony within the meaning of the ACCA);  Sykes v. United States, —- U.S. —-, —-, 131 S. Ct. 2267, 2277 (2011) (holding the Indiana offense of intentionally or knowingly resisting law enforcement through felonious vehicle flight qualified as a violent felony under the residual clause of the ACCA); Johnson v. United States, 559 U.S. 133, 136-37 (2010) (finding a battery conviction does not qualify as a violent felony under the ACCA); Chambers v. United States, 555 U.S. 122, 128 (2009) (failing to report to official custody is not a violent felony under the ACCA); Begay v. United States, 553 U.S. 137, 144–45 (2008) (finding a conviction for driving under the influence of alcohol or drugs is not a violent felony); James v. United States, 550 U.S. 192, 204-05 (2007) (finding an attempted burglary conviction is a violent felony within meaning of the residual clause under a Florida statute that requires an "overt act directed toward entering or remaining in a structure or conveyance"); Leocal v. Ashcroft, 543 U.S. 1, 9 (2004) (interpreting the word "use" in the phrase "use, attempted use, or threatened use of physical force" under the ACCA as requiring "a higher degree of intent than negligent or merely accidental conduct").

[14] "Although Leocal reserved the question whether a reckless application of force could constitute a 'use' of force, the Courts of Appeals have almost uniformly held that recklessness is not sufficient." United States v. Castleman, 134 S. Ct. at 1414 n.8 .

under 18 U.S.C. § 922(g)(9) is satisfied by the degree of force that supports a common-law battery conviction).

Section 924(e)(2)(B)(ii) contains a list of enumerated violent felonies: burglary, arson, extortion, and use of explosives, as well as a residual clause. *See* 18 U.S.C. § 924(e)(2)(B)(ii). For a state-law conviction for a listed crime, regardless of its exact definition or label, to count as a predicate "violent felony" under the Act, the crime must have the basic elements of the listed crime, "in the generic sense in which the term is now used in the criminal codes of most States." *Taylor v. United States*, 495 U.S. 575, 598 (1990). When the offense of conviction does not have the requisite element of force under § 924(e)(2)(B)(i) and is not one of the enumerated crimes in subsection (ii), the violent-felony determination is made pursuant to the "otherwise" clause of § 924(e)(2)(B)(ii). *United States v. Tucker*, 740 F.3d 1177, 1182 (8th Cir. 2014) (en banc). The enumerated crimes provide guidance in making the determination under the residual clause. *Sykes v. United States*, —- U.S. —-, —-, 131 S. Ct. 2267, 2273 (2011) (stating the requisite risk is found when the risk posed is comparable to that posed by its closest analog among the enumerated offenses); *United States v. Brown*, 734 F.3d 824, 826 (8th Cir. 2013) ("to fall within the residual clause, a prior offense must present a serious potential risk of physical injury to another and be roughly similar, in kind, as well as degree, of risk posed to that of [the listed offenses]"); *see also James v. United States*, 550 U.S. 192, 203 (2007).

To determine whether a past conviction is for a violent felony or a serious drug offense, courts use the framework set out in *Taylor,* 495 U.S. at 599-602, as refined by

15

its progeny, most notably *Descamps,* 133 S. Ct. at 2283-86.[15]  *See Tucker*, 740 F.3d at 1179.  A court must first establish the "generic, contemporary meaning" of the predicate offense in question, which generally corresponds to the "sense in which the term is now used in the criminal codes of most States."  *Taylor*, 495 U.S. at 598.  Courts "use what

---

[15] The Sixth Circuit has indicated that there is considerable confusion and disagreement over which state offenses qualify as predicates under the ACCA and the Guidelines, especially under the residual clauses. *United States v. Prater*, 766 F.3d 501, 519 (6th Cir. 2014).  For example,

> [s]ince the Supreme Court decided *Sykes* in 2011 (and *Chambers* in 2009, *Begay* in 2008, and *James* in 2007), it has continued to receive multiple certiorari petitions asking it to determine which state-law offenses qualify as violent felonies and crimes of violence under the residual clauses. *See Derby v. United States,* —— U.S. ——, 131 S. Ct. 2858, 180 L.Ed.2d 904 (2011) (Scalia, J., dissenting from denial of certiorari). One Justice— enough to demonstrate reasonable disagreement—has said that "how [the Court] would resolve these cases if [it] granted certiorari would be a fine subject for a law-office betting pool." *Id.* at 2859.  Justice Scalia noted that it is "uncertain how [his] lower-court colleagues will deal with" the Court's ACCA jurisprudence. *Ibid.* Justice Scalia would "ring down the curtain on the ACCA farce playing in federal courts throughout the Nation." *Id.* at 2860.

*Id.* The First Circuit Court of Appeals echoes this sentiment, stating:

> It is no secret that the statutes Congress chose to enact in its understandable effort to focus on violent conduct are imperfect. *See, e.g., Descamps v. United States*, 133 S. Ct. 2276, 2293–94 (Kennedy, J., concurring) ("If Congress wishes to pursue its policy in a proper and efficient way without mandating uniformity among the States with respect to their criminal statutes for scores of serious offenses, and without requiring the amendment of any number of federal criminal statutes as well, Congress should act at once."); *Derby v. United States,* —— U.S. ——, 131 S. Ct. 2858 (2011) (Scalia, J., dissenting from denial of certiorari and so criticizing ACCA's residual provision); *Sykes v. United States,* —— U.S. ——, 131 S. Ct. 2267, 2295 (2011) (Kagan, J., joined by Ginsburg, J., dissenting and lamenting the Supreme Court's difficulties in crafting a workable approach); *Chambers v. United States*, 555 U.S. 122, 131–32 (2009) (Alito, J., joined by Thomas, J., concurring in the judgment) ("[O]nly Congress can rescue the federal courts from the mire into which ACCA's draftsmanship and *Taylor's* 'categorical approach' have pushed us.").  As has been pointed out elsewhere, *See, e.g., Sykes*, 131 S. Ct. at 2284 (Scalia, J., dissenting), the great variation between the different states' criminal statutes has flummoxed the federal courts.

*United States v. Fish*, 758 F.3d 1, 18 (1st Cir. 2014).

has become known as the 'categorical approach:'  They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime— i.e., the offense as commonly understood."  *Descamps*, 133 S. Ct. at 2281. "[T]he offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison."  *Moncrieffe v. Holder*, ⸺ U.S. ⸺, 133 S. Ct. 1678, 1684 (2013) (applying categorical approach and finding, in the related context of the Immigration and Nationality Act ("INA"), that a state conviction for possession with intent to distribute marijuana is not an aggravated felony); *United States v. Pate*, 754 F.3d 550, 554 (8th Cir. 2014) (holding that when determining whether a state law conviction qualifies as a violent felony under the ACCA, sentencing courts must look to the statutory definitions of the prior offenses and not to the facts underlying those convictions).

The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.  *Descamps*, 133 S. Ct. at 2279; *Moncrieffe*, 133 S. Ct. at 1684 (a state offense is a categorical match with a generic federal offense only if a conviction of the state offense "'necessarily' involved . . . facts equating to [the] generic [federal offense].");  *see United States v.Thornton*, 766 F.3d 875, 877 (8th Cir. 2014).  "If the relevant statute has the same elements as the 'generic' ACCA crime, then the prior conviction can serve as an ACCA predicate."  *Id.* Descamps, 133 S. Ct. at 2283.  However, "[i]f the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if

the defendant actually committed the offense in its generic form." *Id.* [16] *See also United States v. Bankhead,* 746 F.3d 323, 327 (8th Cir. 2014) (finding conviction under Illinois robbery statute does not correspond to narrower ACCA requirement and cannot form the basis of an act of juvenile delinquency under the ACCA). "Whether the statute of conviction has an overbroad or missing element, the problem is the same:  Because of the mismatch in elements, a person convicted under that statute is never convicted of the generic crime". *Descamps,* 133 S. Ct. at 2292.  The key "is elements, not facts." *Id.* at 2284.

The term "indivisible" is "used to describe a class of criminal statutes that are drafted with a single set of elements."  *Id.* at 2293 (Kennedy, J., concurring).  An "indivisible" statute "creates an implied list of every means of commission that otherwise fits the definition of a given crime."  *Id.* at 2289 (internal quotation marks omitted).  In contrast, a divisible statute is one that "lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.'"  *Id.* at 2285; *see Moncrieffe,* 133 S. Ct. at 1684 (the modified categorical may be appropriate, where a state statute "contain[s] several different crimes, each described separately").  It "sets out one or more elements of the offense in the alternative."  *Id.* at 2281; *Bankhead,* 746 F.3d at 326 (stating that "[t]he hallmark of divisibility is the enumeration of alternative bases for conviction separated by the disjunctive 'or'").

---

[16] The statute at issue in *Descamps* provided that "any person who enters" certain locations "with intent to commit grand or petit larceny or any felony is guilty of burglary." *Descamps,* 133 S. Ct. at 2294 (Thomas, J., concurring).  The Court found that in failing to require the entry to have been unlawful in the way most burglary laws do—generally demanding breaking and entering or similar conduct, the state law swept widely, beyond the normal generic definition of burglary. *Descamps,* 133 S. Ct. at 2283 (noting that California defines burglary so broadly as to include shoplifting).

The Supreme Court has approved a variant of the categorical approach "labeled (not very inventively) the 'modified categorical approach'—when a prior conviction is for violating a so-called "divisible statute." *Descamps*, 133 S. Ct. at 2287; *see Tucker*, 740 F.3d at 1179–80 ("If one alternative in a divisible statute qualifies as a violent felony, but another does not, we apply the 'modified categorical approach' to determine under which portion of the statute the defendant was convicted."). The modified categorical approach is to be used in a narrow range of cases.[17] *Descamps*, 133 S. Ct. at 2283 (stating "[t]he modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction"). The modified approach "enable[s] a sentencing court to conclude that a jury (or a judge at a plea hearing) has convicted the defendant of every element of the generic crime"— "[a] later sentencing court need only check the charging documents and instructions ("Do they refer to a gun or something else?") to determine whether in convicting a defendant under that divisible statute, the jury necessarily found that he committed the ACCA-qualifying crime." *Id.* at 2290.

When a statute does not contain alternative elements but "criminalizes a broader swath of conduct than the relevant generic offense," courts may not apply the modified categorical approach. *Id.* at 2281-82. This is so because "under ACCA, the sentencing

---

[17] The Supreme Court's prior cases involving the modified categorical approach all "rested on the explicit premise that the laws 'contain[ed] statutory phrases that cover several different . . . crimes,' not several different methods of committing one offense." *Descamps,* 133 S. Ct. at 2285 n.2. (quoting *Johnson*, 559 U.S. at 144).

court's finding of a predicate offense indisputably increases the maximum penalty" and the elements-centric categorical approach "avoids the Sixth Amendment concerns that would arise from sentencing courts' making factual findings that properly belong to juries," and averts "'the practical difficulties and potential unfairness of a factual approach.'" *Id.* at 2287-88 (quoting *Taylor*, 495 U.S. at 601.

Since *Descamps*, the Eighth Circuit has applied the ACCA in several cases with mixed results. The Eighth Circuit Court of Appeals, sitting en banc, found the Nebraska statute criminalizing escape from custody, though divisible in some respects, was indivisible "as between escape from secure custody and nonsecure custody." *Tucker*, 740 F.3d at 1182.[18] Noting the statute "encompasses both conduct that does and conduct that does not present a serious potential risk of physical injury to another," the court found "the statute [could] be violated under diverse levels of security," and the court could not "say that a conviction under that portion of the statute could be considered to present a serious potential risk of injury to another in the 'ordinary' case." *Id.* at 1183. Accordingly, it found a conviction under Nebraska escape statute did not qualify as a violent felony under the residual clause. *Id.* at 1184.

In *United States v. Thornton*, 766 F.3d at 877, the Eighth Circuit considered a challenge to a sentence that had been increased for a Kansas burglary conviction. *Id.* at 877. The court found the Kansas statute was divisible in that the statute "set[] out one or more of the elements in the alternative," criminalizing, separately, in numbered paragraphs, knowingly and without authority entering any: "'(1) building, manufactured

---

[18] The statute provides that "[a] person commits escape if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period." Neb. Rev. Stat. § 28–912(1).

home, mobile home, tent or other structure with intent to commit a felony or theft therein; or (2) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein.'" *Id.* at 877 (quoting Kan. Stat. Ann. § 21–3715 (1992)).   Although the Court found the sentencing court was permitted to use the modified categorical approach to determine whether Thornton pleaded guilty to a crime of generic burglary under the ACCA, the Court found the government had not submitted information sufficient to show that the defendant pleaded guilty to generic burglary. *Id.* at 879.

In *Olton v. United States*, 565 Fed. App'x 558, 560 (8th Cir. 2014), the Eighth Circuit found, on remand from the Supreme Court in light of *Descamps*, that the defendant's two convictions under the California burglary statute at issue in *Descamps* should not have been counted as ACCA predicate felonies. *Id.*  It nevertheless found the defendant was not entitled to relief under § 2255 because "the same 235–month sentence could be imposed by imposing consecutive terms of imprisonment for his two counts of conviction (one for being a felon in possession of a firearm under 18 U.S.C. § 922(g) and one for possession of a stolen firearm under 18 U.S.C. § 922(j)) each with a statutory maximum of ten years." *Id.* at 561-62.

> D.    Predicate Offenses

> 1.    Burglary

"Burglary" is one of the offenses specifically enumerated as a violent felony in 18 U.S.C. § 924(e)(2)(B)(ii). *United States v. Thornton*, 766 F. 3d at 877.  "The Supreme Court has defined generic 'burglary' for purposes of the ACCA as 'any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged

entry into, or remaining in, a building or structure, with intent to commit a crime.'"  *Id.* (quoting *Taylor,* 495 U.S. at 599).  The generic crime of burglary "requires an unlawful entry along the lines of breaking and entering."  *Descamps*, 133 S. Ct. at 2285.  The definition does not require that the burglary have as an element that a person be armed, that a building be occupied, or that force be applied.  *Taylor*, 495 U.S. at 597.  "[T]he inclusion of curtilage takes [a state's] underlying offense of burglary outside the definition of 'generic burglary' set forth in *Taylor*, which requires an unlawful entry into, or remaining in, 'a building or other structure.'"  *James*, 550 U.S. at 212 (noting, however, that burglary of the curtilage can qualify as a crime of violence under the residual clause if curtilage is defined narrowly to include only the enclosed area surrounding a structure, so as not to mitigate the risk presented in a completed burglary).

Under Nebraska law, "a person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value."[19] Neb. Rev. Stat. § 28-507.   The elements of burglary are contained in the statute.  *State v. McDowell,* 522 N.W.2d 738, 743 (Neb. 1994).  "It is well settled that a breaking is an essential element of burglary."  *Id.*  Evidence of any act of physical force, however slight, by which obstruction to entering is removed is sufficient to prove "breaking" within the definition of burglary statute.  *Id.* at 744.  The opening of a closed door is a breaking within the meaning of the definition of burglary.  *Id.*  However, walking through an open

---

[19] "Real estate" is. defined as "property consisting of buildings and land."  Real Estate." Merriam-Webster. Merriam-Webster, n.d. Web. 30 Oct. 2014. <http://www.merriam-webster.com/dictionary/real estate>.

door, crawling over a closed door and through an open transom, or climbing over a fence are not "breakings."  *Id.* (noting that "[w]hen burglary is charged, a jury should be instructed that in addition to the use of physical force, however slight, the removal of an obstacle to entry is necessary to find a breaking"); *but see State v. Greer*, 596 N.W.2d 296, 302 (Neb. 1999) (stating "[a]lthough it might have been preferable for the trial court to specifically instruct the jury that removal of an obstacle to entry was required to constitute breaking rather than to rely solely upon examples to communicate this concept to the jury, we cannot say that the failure to do so under the circumstances of this case constituted plain error requiring reversal of the burglary convictions"); *see also* NJI2d, Crim. § 4.4 (defining "to Break and Enter" as "enter[ing] a building by any act of physical force, however slight, including opening a door or window.").

The intent to commit a felony or to steal property is an element of burglary under § 28–507 and, unless the State limits its burglary prosecution to establishing that the defendant intended to steal property, the state is therefore required to specify the felony or felonies that the defendant intended to commit after the breaking and entering.  *State v. Nero,* 798 N.W.2d 597, 605 (Neb. 2011).  Burglary is a specific intent crime—the State is required to prove that a defendant intended to commit a felony or to steal property when he broke and entered.  *State v. Burd*ette, 611 N.W.2d 615, 629 (Neb. 2000).  Under Nebraska law, "malicious" is defined as "intentionally doing a wrongful act without just cause or excuse."  NJI2d Crim 4.0.  "One commits burglary in violation of § 28-507(1) when one, in the proscribed manner, breaks and enters any real property or improvements thereon with the proscribed intent; no actual theft or asportation of

property is required." *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473, 481 (Neb. 1989).

The Eighth Circuit has addressed the Nebraska burglary statute only in connection with an enhanced sentence under the Guidelines definition of "violent felony," expressly noting that its determination did not extend to determining whether attempted burglary in Nebraska would qualify as a violent felony under the ACCA. *United States v. Ross*, 613 F.3d 805, 809-10 (8th Cir. 2010).[20] Also, the *Ross* case involved a conviction for attempted burglary, not the completed crime. *Id.* at 807. The Court considered the charging document under the modified categorical approach to determine that the burglary attempt involved a structure. *Id.* The court applied binding Guidelines commentary and found that a conviction for attempted burglary under Nebraska law is a felony conviction for a "crime of violence" under the Guidelines' definition of burglary. *Id.* at 809; *but see United States v. Burghardt*, 796 F. Supp. 2d 996, 1003 ("holding, as a categorical matter, that conduct covered by the [Nebraska attempted burglary] statute, in the ordinary case, does not present a risk of injury similar to that presented in a completed burglary and does not qualify as an ACCA predicate offense"); *see also United States v. Reid*, —- F.3d ——, —-, 2014 WL 5314563, *5 (8th Cir. Oct. 20, 2014) (finding, under 18 U.S.C. § 924(e), that the Missouri attempted

---

[20] Pre-*Descamps*, the Eighth Circuit found that a South Dakota conviction for third-degree burglary of an unoccupied structure was a generic burglary and a crime of violence under the Guidelines enhancement provision and the ACCA, although it noted that "the statute is potentially over-inclusive in that it defines structure to include motor vehicles, watercraft, aircraft, railroad cars, trailers and tents." *United States v. Stymiest*, 581 F.3d 759, 768 (8th Cir. 2009). The *Stymiest* decision would not likely hold up under the categorical approach of *Descamps* because the South Dakota statute is broader than the generic offense.

burglary statute does not present a serious potential risk of injury to another and does not qualify as an ACCA predicate offense).

        2.        Flight to avoid arrest

At the time of the defendant's state court conviction in 2006, the Nebraska statute criminalizing flight to avoid arrest provided that: "any person who operates any motor vehicle to flee in such vehicle in an effort to avoid arrest for the violation of any law of the State of Nebraska constituting a felony commits the offense of felony operation of a motor vehicle to avoid arrest." Neb. Rev. Stat. § 28-905(2) (Cum. Supp. 2006). Flight to avoid a misdemeanor offense constituted a misdemeanor offense. *Id.*, § 28-905(1). There is no specific "mens rea" set out in the statute. The statute was amended in 2008 to provide that the offense of flight to avoid arrest is a misdemeanor if it involves fleeing in a motor vehicle in an effort to avoid arrest, and the offense becomes a felony if the State alleges and proves the additional element of willful reckless operation of a motor vehicle.[21] *See State v. Kinser*, 811 N.W.2d 227, 231 (Neb. 2012); Neb. Rev. Stat. § 28–905(3)(a)(iii) (Reissue 2008).

Under the earlier version of the statute, an attempt to arrest was an essential element of the offense of fleeing in a motor vehicle to avoid arrest, but proof that the defendant actually committed the law violation for which the arrest was attempted was not required. *State v. Taylor*, 666 N.W.2d 753, 758 Neb. (2003). In addition, some articulable evidence that the underlying violation for which the defendant was fleeing to

---

[21] The amended statute also provides that the flight is a felony if the person has previously been convicted under the offense, or the flight results in death or injury. Neb. Rev. Stat. § 29-905(3)(a)(i) & (ii).

avoid arrest constituted a felony was required in order to convict him under the felony component of the statute, as opposed to the misdemeanor offense.[22]  *Id.* at 760.

In 2011, the Supreme Court addressed whether intentional vehicular flight under Indiana law was a violent felony under the ACCA.  *See Sykes*, 131 S. Ct. at 2274.  The Supreme Court employed the categorical approach, looking only to the fact of conviction and the statutory definition of the prior offense to address the question whether the Indiana offense "as a categorical matter, [was] a violent felony" under the ACCA.  *Id.* at 2272-73.  The court first found "[r]esisting law enforcement through felonious vehicle flight" does not have as an element use, attempted use or threatened use of force under subsection (i), and is not among the specific offenses named in subsection (ii) of the ACCA.  *Id.* at 2272.  Accordingly, the Court considered "whether the crime fits within the residual provision of clause (ii)," under which "to be a violent crime, it must be an offense that 'otherwise involves conduct that presents a serious potential risk of physical injury to another.'"  *Id.* at 2273.

The Indiana criminal "resisting law enforcement" statute at issue provided that "any person who knowingly or intentionally . . . flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop" commits a misdemeanor.  Ind. Code § 35–44–3–3(a)(3); *Sykes*, 131 S. Ct. at 2271.  If the person uses a vehicle to flee, the offense is elevated to a Class D felony.  Ind. Code § 35-44-3-3(b)(1)(A).

---

[22] From these cases, the court determines that, under the prior statute, the State was required to prove the following elements to obtain a conviction for felonious flight to avoid arrest:  1) an attempt to arrest the defendant; 2) for a felony; and 3) operation of a motor vehicle to avoid arrest.  The amendment to the statute later added the element of a willful or reckless mind-state.

The Supreme Court stated that "[w]hen a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense," noting that "[a] perpetrator's indifference to these collateral consequences has violent—even lethal—potential for others." *Sykes*, 131 S. Ct. at 2273.   Describing the crime of intentional vehicular fight as a "provocative and dangerous act" that is "a direct challenge to an officer's authority," and performed "in defiance of [law enforcement] instructions," the court found "a criminal who takes flight and creates a risk of this dimension takes action similar, in degree of danger to that involved in" the arson, and listed crimes of burglary. *Id.* at 2273–74.   The Court dispensed with the requirement set forth in *Begay* and *Chambers* that an ACCA predicate crime be "purposeful, violent, and aggressive" by noting that, in contrast to the driving under the influence crime at issue in *Begay*, "[t]he Indiana statute at issue here has a stringent *mens rea* requirement"—"[v]iolators must act knowingly or intentionally." *Id.* at 2275 (quoting *Begay*, 553 U.S. at 146.).[23]   *See also Brown*, 734 F.3d at 827 (stating "[w]hen an 'offense is akin to strict liability' a "court must inquire into the purposeful, violent, and aggressive nature of the offense; otherwise, risk is the dispositive factor'" and finding possession of a short-barreled shotgun is categorically purposeful, violent and aggressive); *but cf. United States v. Johnson*, 526 Fed. App'x

---

[23] The Supreme Court noted that *Begay* involved a crime, that is driving while intoxicated, akin to strict liability, negligence, and recklessness crimes. *Sykes*, 131 S. Ct. at 2276; *see Begay*, 553 U.S. at 145 ("the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate.")  The Court further noted that "the purposeful, violent and aggressive" inquiry is, in many cases, redundant to the risk question, because the two inquiries "tend to be one and the same." *Id.* at 2275.

708 (8th Cir. 2013), *cert. granted*, 134 S. Ct. 1871 (U.S. Apr. 21, 2014) (No. 13-7120) (granting review on the issue of whether mere possession of a short-barreled shotgun should be treated as a violent felony under the ACCA) (argued Nov. 5, 2014).

The Eighth Circuit similarly relied on a *mens rea* requirement to find a conviction under the Minnesota felonious flight-to-avoid-arrest statute was a violent felony under the ACCA.[24] *United States v. Bartel*, 698 F.3d 658, 662 (8th Cir. 2012) (stating that "[c]rimes with a "*mens rea* requirement," need not be "purposeful, violent, and aggressive" to be violent felonies under the ACCA but need only involve "conduct that presents a serious potential risk of physical injury to another"); *see also United States v. Pate*, 754 F.3d at 555 (affirming continuing validity of *Bartel* post-*Descamps* and finding the Minnesota statute sets forth a knowing or intentional *mens rea*); *United States v. Sims*, —- Fed. App'x —-, 2014 WL 5314561, *1 (8th Cir. Oct. 20, 2014) (reaffirming *Bartel* and *Pate*).

III.   DISCUSSION

A.   Fundamental Fairness/Rule 11/Double Jeopardy

The court finds that jeopardy attached when the court accepted the defendant's plea. The court is without authority to vacate or withdraw the defendant's plea *sua sponte*. The court also rejects the government's proposed remedy for the conceded Rule 11 error.

---

[24] The Minnesota statute at issue provided: "Whoever by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer, is guilty of a felony." Minn. Stat. § 609.487 (3) (emphasis added). In turn, to "flee" is defined as "to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle." Minn. Stat. § 609.487 (1) (emphasis added).

The court is presented here with a situation in which a defendant entered a plea of guilty to a charge with a maximum penalty of ten years.  The plea was not in any way conditional and the defendant was not informed of any possibility that he could receive a longer sentence by virtue of his prior convictions.  After the plea was accepted by the court, Probation determined that the defendant was an armed career criminal by reason of two assault convictions and one burglary conviction.[25]   The government concedes the error, and the court finds that it affects the defendant's substantial rights.  The government contends that the remedy for the error would be to allow the defendant to withdraw his plea.  Notably, the defendant has not moved to withdraw the plea and he may well elect to stand by it.  Under these circumstances, the court finds it would be fundamentally unfair to adopt the government's position and allow the government what is essentially a second bite at the apple—a renewed opportunity to re-indict the defendant in order to obtain a fifteen-year mandatory minimum sentence.

The court is guided by the overriding principle that as a matter of fundamental fairness, a defendant entering a plea is entitled to notice of the charge and penalties to which he is exposed.  This defendant pled guilty to the charge for which he was indicted.  There was no plea agreement for the court to either accept or reject.  Both the government and the defendant had settled expectations in connection with the plea. From the defendant's perspective, the point of a plea is to admit guilt to the crime

---

[25] Probation did not rely on the flight conviction and the defendant was not advised of the government's reliance on that conviction until the eve of his sentencing hearing.  The government had "no objections to the information, calculations and conclusions contained within the Revised Presentence Investigation Report," and thereby arguably waived its purported reliance on the flight conviction.  See Filing No. 26, Response at 3.  Because the court finds the conviction is not an ACCA predicate "violent crime," the court need not address the issue.

charged, obtain the lower sentence that comes with acceptance of responsibility, and avoid a trial and the potentially harsher punishment that may come with it. To allow the government to either re-indict the defendant, or to force or pressure the defendant to negotiate a plea anew would not only be inappropriate but would invite constitutional error, since jeopardy has attached.

The fact that a Rule 11 error could in some instances be found harmless on review is not determinative of the issue presently before the court. That an error could be reviewed under the harmless error standard does not mean the court should commit or compound the error in the first instance. The cases cited by the government in support of its position did not involve a double jeopardy challenge or errors that affected a defendant's substantial rights.[26] The government's proposed remedy would be inconsistent with the rudimentary demands of fair procedure.

Because the defendant properly preserved the issue, the burden is on the government to show that the knowledge and comprehension of the fifteen year mandatory minimum would not have been likely to affect his willingness to plead guilty. This the government has not done. The court finds the defendant is entitled to be punished for the crime charged.

B.      Objections to the PSR

---

[26] The case is closely on point to the facts presented in the Seventh Circuit case of *Adame-Hernandez*, wherein the Court noted that "the risk of prosecutorial manipulation is also a concern." *Adame-Hernandez*, 763 F.3d at 830 ("the government may sometimes be tempted to scrap a judicially accepted plea and issue a new indictment to add factual support or correct procedural infirmities. But it cannot do so, any more than it can retry an already-convicted defendant in order to obtain a special verdict rather than a general one."). "Rule 11 is the defendant's chief bulwark against prosecutorial abuse, and the rule was not followed in [the *Adame-Hernandez*] case." *Id.* In the absence of Eighth Circuit precedent to the contrary, the court is guided by the Seventh Circuit's holding in *Adame-Hernandez.*

The Supreme Court's adherence to the elements-centric approach with respect to recidivist enhancements shows that, although the prior-conviction exception to *Apprendi* still survives, there are Constitutional implications involved in its application. To avoid Constitutional ramifications, the sentencing court must ensure, with respect to the prior conviction, that every element of a generic felony crime of violence under the ACCA was either found by a jury beyond a reasonable doubt, or admitted by the defendant.

The court finds the defendant's objection to use of his burglary conviction as an ACCA predicate offense should be sustained.  The court first finds that Nebraska's burglary statute, Neb. Rev. Stat. § 28-905(1), is an indivisible statute and the categorical approach should be applied.  The statute does not set forth alternative elements to separate crimes.[27]  It is violated by a broad category of conduct involving entry onto land and improvements erected thereon with intent to commit a felony or steal property. Under the categorical approach, the court focuses on the fact of conviction and the statutory definition of the prior offense, rather than the conduct underlying the offense.

A comparison of the elements of generic burglary—"an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime"— to the elements of the Nebraska offense—(1) willfully, maliciously and forcibly; (2) breaking and entering; (3) any real estate or improvements thereon; (4) with intent to commit any felony or steal property of any value—shows that the elements differ.  The Nebraska statute proscribes a broader range of conduct than the generic burglary offense.  The generic offense is limited to "breaking and entering" a "structure."   The

---

[27] Subsection (2) states only the "[b]urglary is a Class III felony."  Neb. Rev. Stat. § 28-905(2).

Nebraska statute criminalizes breaking and entering more than just structures, but includes real estate, which consists of buildings and land.  Nebraska caselaw interprets the "breaking and entering" element to cover merely opening a door or a gate.  A conviction in Nebraska could be for entry onto land via opening a gate.  Nebraska defines burglary so broadly as to include conduct such as trespassing on undeveloped land with intent to commit a crime as long as there is a predicate breaking.

The Nebraska law would not require a jury to determine the element of entry into a structure.  Accordingly, the elements required to prove a Nebraska burglary offense are not the same as, nor are they narrower than, the elements required to prove a generic burglary.  The court finds, as a categorical matter, that a burglary conviction under Neb. Rev. Stat. § 28-507 cannot qualify as a predicate violent felony under the ACCA.

Although the court finds that this is not among the narrow category of cases in which the court could employ the modified categorical approach and consult certain judicial documents, the result would be the same under the modified categorical approach.  The documents offered by the government show that the defendant was charged only with breaking and entering into "real estate or improvements erected thereon at 2518 N. 66th St.," and "the said real estate was occupied by Michael Schlautman."  The order in connection with his conviction specifies no more than that the defendant pled no contest to a class III felony burglary charge.  Even if the statute were interpreted as divisible between conduct that would equate to generic burglary (entry into a building or structure) and conduct that would not (entry onto land), the documents do nothing to enable the court to determine which alternative element the

32

defendant admitted.  Even under the modified categorical approach, the court could not find that the defendant actually admitted every element of the generic offense of burglary.

To the extent that the residual clause comes into play, the court would also find that burglary in Nebraska does not qualify as an ACCA predicate violent crime under that clause.[28]  The risk of a burglar encountering another person—and thus risk of a "violent confrontation"—is significantly lower for entry onto land or "real estate," than into a structure.  Real estate is not restricted to places where people are likely to be found.  The resulting risk is simply not comparable in severity or likelihood to the risk posed by generic burglary.  *See e.g., United States v. Prater*, 766 F.3d 501, 514-15 (6th Cir. 2014).

The court next finds that the defendant's objection to the use of his conviction for flight to avoid arrest as an ACCA predicate violent felony offense should be sustained.  Again, the offense does not involve use of force as an element, nor is it a listed offense under the ACCA, so the court again applies the categorical approach.  The court must determine whether the defendant's conviction qualifies as an ACCA predicate offense under the residual clause—that is, determine whether, categorically, the state law offense is a crime that otherwise involves conduct that presents a serious risk of physical injury to another.

---

[28] The categorical approach also applies to the residual clause.  *Sykes*, 131 S. Ct. at 2272 (The sentencing court may consider only "'whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.'") (citation omitted).  The Supreme Court specifically declined to address whether burglary qualified as a violent felony under the ACCA's "residual clause."  *Descamps*, 133 S. Ct. at 2293 n. 6.

Unlike the Indiana statute at issue in *Sykes*, or the Minnesota statute at issue in *Bartel*, the Nebraska statute, as it existed at the time Richards was convicted, had no "stringent mens rea" requirement so as to bring it within the purview of the Supreme Court's holding in *Sykes*. Those statutes had "knowing and intentional" behavior as an element. A crime without a *mens rea* requirement would have to satisfy the "purposeful, violent and aggressive" standard of conduct to amount to ACCA-predicate violent felonies. *See Bartel*, 698 F.3d at 662.

In *Sykes*, the Supreme Court discussed culpable conduct in terms of defiance of orders, dangerous situations, potential confrontations, and as "entail[ing the] intentional release of a destructive force dangerous to others." *Sykes*, 131 S. Ct. at 2273. It was these characteristics that contributed to the elevated "risk of injury to others" that made the convictions qualify under the ACCA. Importantly, the Courts' findings in both *Sykes* and *Bartel* hinged on the stringent *mens rea* component. The statutes at issue required the peace officers to identify themselves and visibly or audibly order the perpetrator to stop and required the perpetrator to know that he was fleeing a peace officer in the scope of his duties. The combination of knowing and intentional conduct and defying an official order produce the danger of confrontation that is essential to the determination that felony flight presents a serious risk of physical injury to others.

A conviction under the 2006 Nebraska felony flight law would not necessarily involve conduct, in the usual case, that equates to a serious potential risk of injury that is similar in kind and degree to burglary or arson. Before 2008, the conviction would not have required any finding with respect to *mens rea*. Under the prior statute, a jury would not have been required to find, and a defendant would not have had to admit, any

34

mind-state—whether knowing, intentional, purposeful, malicious, willful or even reckless—save an intent to flee.  The proscribed conduct is closer to strict liability, negligence, or recklessness than to the sort of intentional and harmful conduct covered in *Sykes*.  The statute's later amendments are instructive—the additional element of willful reckless operation of a motor vehicle brings the conduct into the category of offenses that qualify as ACCA predicate violent felonies.[29]

With respect to the earlier statute, however, the court is unable to determine with confidence that the defendant admitted to every element of a crime that qualifies as a violent felony under the ACCA.  The Nebraska statute, as it existed in 2006, in contrast to the Minnesota and Indiana statutes at issue in *Sykes* and *Bartel,* did not require that the defendant's operation of a motor vehicle to avoid arrest be knowing, intentional, purposeful, or even reckless.  A flight that could be characterized as a violent felony would require some level of conscious resistance to an officer's authority.  There is no indication that a flight criminalized under the former statute would entail resistance of the sort that ordinarily induces an escalated response from law enforcement, so as to present the potential for confrontation that puts others in danger.  The court is unable to find that flight to avoid arrest, as ordinarily committed under the statute in effect at the time of the defendant's conviction, would have presented the required degree of risk in most instances.  Accordingly,

---

[29] In the prior statute, the distinction between a misdemeanor violation and a felony violation was dependent on whether the flight was from an underlying felony or an underlying misdemeanor offense. That distinction makes no meaningful difference to the determination of whether the conduct presents a serious risk of danger to others.  The present statute's requirements of either recidivism, injury, or willful recklessness imposes additional criteria for a felony that are relevant to the risk inquiry.

IT IS HEREBY ORDERED:

1.      The defendant's objections to the revised PSR are sustained;

2.      Counsel are directed to contact the chambers of the undersigned within 7

days of the date of this order to schedule a sentencing hearing.

Dated this 26th day of November, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge